IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RAYMOURS FURNITURE COMPANY, INC., | Civil No. 13-4440 (JBS) |
| Plaintiff, | |
| v. | **OPINION** |
| SANDRA ROSSI, | |
| Defendant. | |

APPEARANCES:

Edward T. Groh, Esq.
Raymours Furniture Company, Inc., d/b/a Raymour & Flanigan
1314 U.S. Highway 22
Phillipsburg, NJ 08865
     Attorney for Plaintiff Raymours Furniture Company, Inc.

Alan H. Schorr, Esq.
Alan H. Schorr & Associates, PC
5 Split Rock Drive
Cherry Hill, NJ 08003
     Attorney for Defendant Sandra Rossi

**SIMANDLE**, Chief Judge:

## I. Introduction

This matter comes before the Court upon a motion to compel arbitration and stay proceedings by Plaintiff Raymours Furniture Company, Inc. [Docket Item 7] and a cross-motion to dismiss for lack of subject matter jurisdiction and failure to state a claim by Defendant Sandra Rossi [Docket Item 9].

The principal issues presented are whether this Court has subject matter jurisdiction over Plaintiff's petition to compel arbitration and whether there is an enforceable arbitration agreement between the parties. Enforceability turns upon the issue of whether the employer's handbook, which contains an unqualified disclaimer of creating any terms or conditions of employment, and which retains the sole discretion of the employer to change the handbook's provisions without notice, is enforceable as an arbitration agreement due to its description of an arbitration program.

For the reasons discussed below, the Court will deny Plaintiff's motion to compel arbitration and grant Defendant's cross-motion to dismiss for failure to state a claim.

## II. Background

### A. Factual Background

The following facts are those alleged in the Amended Complaint or included in indisputably authentic documents, the existence of which Plaintiff alleges in its Amended Complaint.

Plaintiff alleges that Defendant has been employed by Plaintiff as a Sales Associate in New Jersey since June 2000. (Am. Compl. [Docket Item 4] ¶ 3.) On June 10, 2013, Defendant, through her attorney, contacted Plaintiff and claimed that Plaintiff discriminated against her on the basis of disability by transferring her from its retail showroom in Cherry Hill, New

Jersey to its retail showroom in Deptford, New Jersey, knowing that Defendant was incapable of working in the Deptford showroom due to her medical conditions. (Id. ¶¶ 4, 36.) Defendant also claimed that Plaintiff retaliated against her in May 2013 because of her alleged complaints of discrimination and her transfer to the Deptford showroom constituted constructive discharge. (Id. ¶¶ 5-6, 36.) On June 28, 2013, Defendant, through her attorney, demanded $150,000 to settle her claims of discrimination, retaliation, and constructive discharge. (Id. ¶ 37.) On July 12, 2013, Plaintiff filed a demand for arbitration with AAA as to Defendant's claims and notified Defendant. (Id. ¶¶ 38-39.)

Plaintiff alleges that Defendant's underlying claims are subject to an enforceable arbitration agreement and Defendant notified Plaintiff on July 22, 2013 that she refused to honor that agreement. (Id. ¶ 40.) The arbitration agreement is contained in Plaintiff's Associate Handbook ("Handbook"), which contains information about its employment policies. (Id. ¶ 14.) On October 21, 2009, Defendant signed a Receipt and Acknowledgement ("Acknowledgment") of Plaintiff's Handbook by which Defendant promised to become familiar with the Handbook and all future revisions and agreed that her continued employment constituted her agreement to be bound by all future

revisions. (Id. ¶¶ 15-16.) The October 2009 Acknowledgment

contains the following provision:

> My signature below indicates that I have received a copy of
> Raymour & Flanigan's Associate Handbook. I understand that
> it contains important information about Raymour &
> Flanigan's employment policies, that I am expected to read
> the Handbook and familiarize myself with its contents, and
> that the policies in the Handbook apply to me. I further
> understand that Raymour & Flanigan has the right to change
> its employment policies at any time, that I am responsible
> for becoming familiar with these changes as they occur,
> that my continued employment constitutes my agreement that
> such changes apply to me, and that I can find the most up-
> to-date version of the Handbook and the company's policies
> through HR Direct on Raymour & Flanigan's Intranet. If I
> have any questions about the Handbook or Raymour &
> Flanigan's employment policies, I understand that I can ask
> my manager or a member of the Human Resources Department.

(Id. ¶ 16; Am. Compl. Ex. 1 [Docket Item 4-1.])

In January 2012, Plaintiff adopted an Employment

Arbitration Program ("Arbitration Program") which it

incorporated into its Handbook. (Id. ¶ 17; Am. Compl. Ex. 2

[Docket Item 4-1] at 57.) The Arbitration Program requires

Plaintiff's employees to submit to final and binding arbitration

any and all employment-related claims that are asserted at any

time after January 1, 2012.[1] (Id. ¶ 18.) The Arbitration Program

---

[1] The Arbitration Program defines "Claim" and "Claims" as
follows:
> [A]ny employment-related or compensation-related claims,
> disputes, controversies or actions between you and us
> that in any way arise from or relate to your employment
> with us or the termination of your employment with us **and**
> that are based upon a "legally protected right." This
> includes any disputes about your hiring, firing, wages or
> compensation, discipline, leaves of absence, accommodations

specifically includes claims under the Americans with
Disabilities Act ("ADA") and Title VII. (Id. ¶ 19.) The language
of the Arbitration Program provides, "This Program is an
essential element of your continued employment relationship with
Raymour & Flanigan and is a condition of your employment." (Id.
¶ 20.)

On February 1, 2012, Plaintiff notified all employees about
the updated Handbook and the Arbitration Program by sending an
email requiring employees to access the Handbook through
Plaintiff's online HR Self-Service Portal ("Self-Service
Portal"), read the materials, and acknowledge receipt. (Id. ¶
24.) Plaintiff's employees in the Philadelphia market, including
Defendant, received three email reminders regarding the updated
Handbook. (Id. ¶ 25.) On February 8, 2012, Defendant logged onto
Plaintiff's Self-Service Portal and acknowledged receipt and
review of the updated Handbook. (Id. ¶ 31; Am. Compl. Ex. 8.)

In April 2013, Plaintiff again updated its Handbook and
notified its employees by email that they were required to

---

and workplace treatment as well as our policies and
practices (including any pattern, practice, act or
omission) relating to such matters. "Claim" means not only
initial claims but also counterclaims, cross-claims and
third-party claims, regardless of whether such claims seek
legal, equitable or declaratory relief. Examples of such
Claims include (but are not limited to) those alleging
discrimination, harassment, hostile work environment,
retaliation or failure to pay wages in accordance with law.
(Id. ¶ 18; Compl. Ex. 2 at 58) (emphasis in original).

access the Handbook, review it, and acknowledge receipt. (Id. ¶
33.) On April 30, 2013, Defendant logged onto the Self-Service
Portal and acknowledged that she received and reviewed the
updated Handbook. (Id. ¶ 34; Am. Compl. Ex. 11.)

Plaintiff alleges that this Court has jurisdiction over
this matter on three bases: (1) pursuant to 28 U.S.C. 1331 and
1343(3) because the underlying claims arise under the ADA and
Title VII; (2) pursuant to Section 4 of the Federal Arbitration
Act ("FAA"), 9 U.S.C. § 4; and (3) pursuant to 28 U.S.C. 1332
because the amount in controversy exceeds $75,000 and is between
citizens of different states. (Id. ¶¶ 10-12.)

**B. Procedural Background**

Plaintiff filed a petition to compel arbitration on July
22, 2013 and a motion to compel arbitration and stay proceedings
on September 27, 2013. [Docket Items 1 & 7.] On October 8, 2013,
Defendant filed opposition to Plaintiff's motion to compel
arbitration and a cross-motion to dismiss. [Docket Item 9.] On
November 26, 2013, the Court convened a status conference to
address Defendant's application for a temporary stay of
arbitration proceedings pending the outcome of the above
motions. On November 27, 2013, the Court entered an Order
temporarily staying arbitration. [Docket Item 22.]

This Opinion addresses the two motions pending before the
Court.

## III. Discussion

### A. Standard of Review

A motion to dismiss under Fed. R. Civ. P. Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000) (citing <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)). Here, Defendant's motion to dismiss presents a facial attack on the subject matter jurisdiction of Plaintiff's complaint. In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to plaintiff. <u>Gould</u>, 220 F.3d at 169 (citations omitted).

In the Third Circuit, when a party moves to compel arbitration based on the terms of an agreement, and an indisputably authentic version of the agreement is before the court, a motion to compel arbitration is properly evaluated under the standard of a Rule 12(b)(6) motion to dismiss. <u>Somerset Consulting, LLC v. United Capital Lenders, LLC</u>, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011).

In its review of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." <u>Phillips v. County of Allegheny</u>, 515 F.3d

224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The court, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. <u>See</u> <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

**B. Analysis**

Plaintiff requests that the Court compel arbitration because the underlying dispute between the parties is subject to an enforceable arbitration provision contained in Plaintiff's Handbook. Defendant opposes Plaintiff's motion to compel arbitration and moves to dismiss on three grounds. First, Defendant argues that Plaintiff's petition to compel arbitration should be dismissed because there is no ripe claim or controversy. Second, Defendant argues that Plaintiff's petition should be dismissed because the court lacks subject matter jurisdiction. Third, Defendant argues for dismissal because there is no enforceable agreement to arbitrate between the parties.

The Court finds no ripeness or subject matter jurisdiction issue that prevents decision on Plaintiff's petition to compel arbitration and will grant Defendant's motion to dismiss for

failure to state a claim because there is no enforceable arbitration agreement between the parties.

### 1. Ripeness

Plaintiff's petition to compel arbitration is ripe for adjudication. Defendant argues that she never threatened any legal action against Plaintiff and Plaintiff misconstrues conversations regarding a request for accommodation as claims arising under the ADA and Title VII solely to ensure this Court's jurisdiction and deprive Defendant of her right to pursue claims under New Jersey's Law Against Discrimination ("NJLAD"). Defendant contends that allowing Plaintiff to preemptively file a petition to compel arbitration in federal court before Defendant has asserted legal claims will have a chilling effect that undermines the public policy goals of the NJLAD. If Defendant is prevented from bringing claims under the NJLAD arising from Defendant's transfer from Cherry Hill to Deptford, it will be because of an enforceable arbitration agreement between the parties, not because of Plaintiff's quickness to file a petition to compel arbitration. To the extent Defendant's argument regarding ripeness relies on the claims allegedly asserted against Plaintiff or lack thereof, the Court will address those concerns in its discussion of subject matter jurisdiction.

## 2. Subject Matter Jurisdiction

The Court has subject matter jurisdiction to adjudicate Plaintiff's petition to compel arbitration. Although Defendant properly notes that the FAA does not provide an independent basis of subject matter jurisdiction, the Court is satisfied that the underlying dispute between the parties properly invokes federal question jurisdiction.

Section 4 of the FAA does not provide federal jurisdiction over the parties' dispute. See Hall St. Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 581-82 (2008). Section 4 provides that petitions to compel arbitration may be brought before "any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. However, "[t]he Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 26 n.32 (1983). "A federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law." Vaden v. Discover Bank,

556 U.S. 49, 62 (2009). "[T]he 'look through' approach permits a

§ 4 petitioner to ask a federal court to compel arbitration

without first taking the formal step of initiating or removing a

federal-question suit--that is, without seeking federal

adjudication of the very questions it wants to arbitrate rather

than litigate." Id. at 65.

Here, Defendant argues that the Court lacks subject matter

jurisdiction because Defendant never filed or even threatened

any claims under the ADA or Title VII and therefore, there is no

underlying claim for the Court to look to determine whether

independent jurisdiction exists. The only possible basis for

Plaintiff's assertion that Defendant made claims under the ADA

and Title VII is telephone conversations between counsel for the

parties in which counsel for Defendant inquired as to why

Plaintiff refused to accommodate Defendant's driving

restrictions after she was transferred to the Deptford showroom.

According to Defendant, if she were to file any claims, she

would file under the NJLAD, not federal law.

In Cmty. State Bank v. Strong, the Eleventh Circuit noted

that the Vaden majority did not decide how a federal court

should assess the parties' controversy where there is no pending

litigation between the parties. 651 F.3d 1241, 1255-57 (11th

Cir. 2011), cert. denied, 133 S. Ct. 101 (2012). The court

relied on Chief Justice Roberts' opinion in Vaden concurring in

11

part and dissenting in part. The court concluded that "where the parties' controversy has not yet been embodied in preexisting litigation, '[a] district court entertaining a § 4 petition' must decide for itself 'what a suit arising out of the allegedly arbitrable controversy would look like.' That is, the court must examine the dimensions of the 'full-bodied controversy,' between the parties, and determine whether any hypothetical claims arising out of that controversy would support federal jurisdiction." Strong, 651 F.3d at 1255 (quoting Vaden, 556 U.S. at 1282 (Roberts, C.J., concurring in part and dissenting in part) (internal quotations and citations omitted)). The Eleventh Circuit then examined the allegations in the petition to compel arbitration, the exhibits attached thereto, and correspondence between the parties regarding arbitration. Id. at 1257-58. The court concluded that defendant could potentially assert a non-frivolous Federal RICO conspiracy claim which provided a sufficient basis for jurisdiction over the petition to compel arbitration. Id. at 1259.

Considering the allegations in Plaintiff's Amended Complaint, Defendant's Answer, and the parties' concessions during the November 26, 2013 status conference, the Court concludes that Defendant could bring claims under the ADA for the allegedly arbitrable controversy. Plaintiff alleges in the Amended Complaint that on June 10, 2013, Defendant, through her

12

attorney, claimed that Plaintiff discriminated against her on the basis of disability when it transferred her to the Deptford showroom, retaliated against her for complaining about discrimination and constructively discharged her. (Am. Compl. ¶ 36.) In her Answer, Defendant denies this allegation, but states that Defendant "alleged that Plaintiff discriminated against her due to her age and disability and retaliated against her for her complaints of discrimination." (Ans. ¶ 4.) Defendant further states in her Answer that "[i]n addition to the discriminatory and retaliatory transfer, Plaintiff refused to provide a reasonable accommodation to Ms. Rossi's inability to drive to Deptford." (Id. ¶ 5.) Defendant's Answer emphasizes that Defendant has not filed any litigation nor alleged any violation of a federal statute. Instead, Defendant believes Plaintiff's conduct violates the NJLAD, the New Jersey Constitution, and the Conscientious Employee Protection Act. (Id. ¶¶ 7-8.) Additionally, during the status conference, the parties agreed that counsel for the parties discussed Defendant's transfer and request for accommodation in at least two telephone conversations in June 2013 and spent a full day in mediation.

Based on the above, the Court finds that Defendant could potentially assert a non-frivolous claim under the ADA for discrimination on the basis of disability or failure to accommodate. Defendant's adamant contention that if it were to

13

pursue claims against Plaintiff, she would do so under New Jersey law does not alter the Court's analysis. The inquiry is whether "any hypothetical claims arising out of that controversy would support federal jurisdiction," not whether Defendant in fact will file such claims.[2] Because Defendant could potentially assert a claim under the ADA, the Court finds a sufficient basis for jurisdiction over Plaintiff's petition to compel arbitration.[3] Therefore, Defendant's motion to dismiss for lack of subject matter jurisdiction will be denied.

### 3. Enforceable Arbitration Agreement

Although the Court has subject matter jurisdiction to adjudicate Plaintiff's petition to compel arbitration, there is no enforceable arbitration agreement between the parties.

---

[2] The instant action is distinguishable from Cmty. State Bank v. Knox, in which the Fourth Circuit found that there was no controversy between plaintiff and defendant, rendering any potential claim by defendant purely speculative. 523 F. App'x 925, 931-32 (4th Cir. 2013). In Knox, defendant specified in a state court complaint and in sworn affidavits that defendant would not bring any claims against plaintiff, and plaintiff had not asked defendant to arbitrate any claims at all prior to filing the petition to compel arbitration. Id. at 931. Here, Defendant has not disclaimed any potential litigation against Plaintiff. To the contrary, Defendant claimed that Plaintiff discriminated against and failed to accommodate Defendant and made a demand for $150,000 in the June 2013 phone conversations. The parties subsequently spent a full day in mediation. Also, unlike Knox, Plaintiff has initiated arbitration proceedings in this matter.

[3] Having found subject matter jurisdiction pursuant to 28 U.S.C. 1331, the Court need not address Plaintiff's argument that subject matter jurisdiction is also proper pursuant to 28 U.S.C. 1332.

14

Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009) (citing Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009)). The question of whether the parties agreed to arbitrate is governed by state law principles regarding formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Under New Jersey law, an arbitration agreement "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim. Generally, [the court] determine[s] a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument." Leodori v. CIGNA Corp., 814 A.2d 1098, 1104 (N.J. 2003).

The issue in the instant action is whether Defendant agreed clearly and unambiguously to arbitrate the underlying dispute. Plaintiff contends that Defendant agreed to arbitrate her claims through her acknowledgment of the Arbitration Program and

15

through her conduct. Defendant argues that the Arbitration Program is not enforceable because the Handbook unequivocally states that it does not create a contract and Plaintiff does not intend to be bound by its policies.

Defendant relies on Woolley v. Hoffman-La Roche, Inc. for the proposition that employment handbooks may create an enforceable agreement of employment terms unless the employer expressly states that the handbook is not a contract. 491 A.2d. 1257 (N.J. 1985). In Leodori, the Supreme Court of New Jersey rejected defendant's argument that plaintiff's receipt of the handbook and continued employment constituted an implied agreement to abide by the arbitration policy. 814 A.2d at 1105. The Leodori court found the employer's reliance on Woolley misplaced because Woolley's implied-contract doctrine "focuses on an employer's obligation to its employees, not vice versa." Id. Additionally, the court noted that Woolley was inapplicable because the opening page of the handbook stated that defendant could terminate employment at any time for any reason. Id. at 1106. The court then found the arbitration provision in the handbook unenforceable under traditional contract principles due to the absence of plaintiff's signature on the acknowledgment form that accompanied the handbook or any other explicit indication that plaintiff intended to be bound by the arbitration provision. Id. at 1107. Finally, the court noted

that "the acknowledgment form that plaintiff did sign would have sufficed as concrete proof of a waiver had it stated that the employee had agreed to the more detailed arbitration provision contained in the handbook. (The acknowledgment form states only that plaintiff had 'received' the handbook, not that he had 'agreed' to its terms.)" Id.

Plaintiff contends that Leodori imposes a stricter standard for arbitration provisions than applies to other contracts and such a heightened standard is preempted by the FAA. However, the Leodori court expressly stated that it was applying "familiar contract principles."[4] Id. at 1106. The Court agrees with Defendant that Woolley and Leodori remain good law and control here. See Molloy v. Am. Gen. Life Cos., Civ. 05-4547 (MLC), 2006 WL 2056848, at *4 (D.N.J. July 21, 2006) (rejecting argument that Leodori is preempted by the FAA).

The instant action does not turn on the absence of Defendant's acknowledgment of the Handbook describing the arbitration program, but on Plaintiff's expansive Woolley

---

[4] "When one party, however, presents a contract for signature to another party, the omission of that other party's signature is a significant factor in determining whether the two parties mutually have reached an agreement. Cf. 1 Richard A. Lord, Williston on Contracts § 2:3 (4th ed. 1990) (noting that although party's signature on written contract 'probably' is not required in absence of statute, 'a signature is customary and desirable')." Id.

disclaimer on the first page of the Handbook. The first page

after the table of contents contains the following statement:

> **THIS HANDBOOK IS NOT A CONTRACT OF EMPLOYMENT.**
>
> **All associates of the Company are employed on an "at-will" basis, which means that both you and the Company have the right to terminate employment at any time, for any reason or no reason, with or without cause and with or without notice.**
>
> **Nothing in this Handbook, or any other Company practice or communication or document, including benefit plan descriptions, creates a promise of continued employment, employment contract, term or obligation of any kind on the part of the Company. No manager or associate of the Company has the authority to make promises or statements to the contrary.**
>
> This Handbook contains the rules, procedures, policies and practices of Raymour & Flanigan. This Handbook is an overview that is intended to serve as a useful reference guide for you and is intended for informational purposes only.

(Am. Compl. Ex. 9 at 5) (emphasis in original).

The disclaimer language above is far more expansive than

that in <u>Leodori</u>, which expressly exempted the employer's

arbitration policy:

> This handbook does not alter the "at will" status of your employment. Just as you may terminate your employment at any time for any reason, your employment may be terminated at any time for any reason. Except for the **arbitration policy mentioned in this handbook,** which **is a term and condition of your continued employment,** the policies and practices set forth herein are for your information and guidance. Things change and there is no guarantee that the policies and practices contained herein will not change in the future. The company reserves the right to alter, amend, and make exceptions to this handbook at any time in its sole discretion, with or without prior notice.

_Leodori_, 814 A.2d at 1100. The _Leodori_ court found this language

sufficient to disclaim "the formation of a Woolley contract" and

evidence of the company's intent "to be responsible only for

those obligations that it affirmatively had accepted." _Id._ at

1106. Importantly, no such exception for the Arbitration Program

appears in the general disclaimer on the first page of

Plaintiff's Handbook.

Moreover, the Handbook here contains provisions that are

confusing and contradictory. Plaintiff on the first page of the

Handbook disclaims any intent to be bound by the provisions

therein, then over 50 pages later identifies a provision it now

intends to be enforceable as an arbitration agreement. The

second paragraph of the Handbook section addressing the

Arbitration Program states, "**This Program is an essential

element of your continued employment relationship with Raymour &

Flanigan and is a condition of your employment. However, it is

not a contract of employment and does not change your status as

an at-will employee of Raymour & Flanigan.**" (Am. Compl. Ex. 9 at

58) (emphasis in original). In such circumstances, Defendant

could not have agreed "clearly and unambiguously to arbitrate."

Plaintiff may not in a single, voluminous document, which bears

disclaimer that nothing therein creates a contract of

employment, seek to enforce certain provisions while regarding

others as unenforceable without clear notice to that effect and unambiguous agreement by Defendant.

Further, the Court is unpersuaded by Plaintiff's explanation that under well-settled rules of contract interpretation the specific provisions regarding arbitration should trump the Handbook's general at-will disclaimer. The only authority Plaintiff cites for this proposition in the arbitration context is non-binding and distinguishable. In Patterson v. Tenet Healthcare, Inc., the arbitration provision was set forth in a separate page of the employee handbook with distinct language and accompanied by an acknowledgment form that was to be removed from the handbook after being signed by the employee. 113 F.3d 832, 835 (8th Cir. 1997). The acknowledgement form contained a general at-will disclaimer, as well as a separate paragraph regarding the arbitration policy stating, "I understand AMI makes available arbitration for resolution of grievances. I also understand that as a condition of employment and continued employment." Id. Here, the general at-will disclaimer on the first page of Plaintiff's Handbook makes no mention of the Arbitration Program and employees were required to acknowledge they read the entire Handbook by checking a box in the Self-Service Portal, not in a separate acknowledgment form pertaining to the Arbitration Program. With little effort, like the employer in Patterson, Plaintiff could have separately

distributed information regarding the Arbitration Program or provided a separate acknowledgment form making clear the parties' intent to be bound. Having failed to do so, and in light of the bolded disclaimer on the first page of the Handbook, Defendant did not clearly and unambiguously agree to the Arbitration Program.

Further, none of the communications from Plaintiff to Defendant ensured she understood that the Arbitration Program was distinct from the non-binding provisions of the Handbook. The February 1, 2012 email regarding updates to the Handbook does not identify the Arbitration Program as exempt from the general disclaimer on the first page of the Handbook. The email states, "Because of the significant updates that have been made, we will be requiring all associates to acknowledge that they have reviewed the revised handbook." (Am. Compl. Ex. 3.) It then lists the following three updates: Employee Assistance Program, Updated Direct Deposit section, and Employee Arbitration Program. Id. The email contains a vague description of the Arbitration Program that fails to adequately explain the program and distinguish it from other provisions in the Handbook: "The addition of this program, similar to many other such programs adopted by employers across the country, implements a consistent and efficient way for our associates and the company to resolve employment disputes covered by the program." Id. None of the

subsequent emails make specific reference to the Arbitration Program. The step-by-step guide circulated to employees to explain how to acknowledge that they have read the new Handbook only contains screenshots of the Self-Service Portal and the location of the box indicating that "I certify that I have read the policy above." (Am. Compl. Ex. 4.) Having an employee re-read a document that the employer proclaims is not a contract does not transform it into a contract to which the parties -- employer and employee -- are bound. Further, nothing in these communications impress upon the reader the import of the Arbitration Program or Plaintiff's attempt to exempt it from the unequivocal disclaimer on the first page of the Handbook.

While Defendant acknowledged on two occasions that she read the updated Handbook containing the Arbitration Program provision, Defendant properly distinguishes cases where arbitration agreements have been upheld because they were contained in a document distinct and separate from the employee handbook with a separate acknowledgment form. See Bourgeois v. Nordstrom, Inc., Civ. 11-2442 (KSH), 2012 WL 42917, at *3 (D.N.J. Jan. 9, 2012); Fields v. Morgan Tire & Auto., Inc., Civ. 07-2715 (RBK), 2008 U.S. Dist. LEXIS 21788, at *9-11 (D.N.J. Mar. 18, 2008). The instant action is also distinguishable from Forsyth v. First Trenton Indem. Co. where the Appellate Division of the Superior Court of New Jersey found the "'record as a

whole' reflects a knowing and voluntary waiver of plaintiff's rights." L-9185-08, 2010 WL 2195996, at *8 (N.J. Super. Ct. App. Div. May 28, 2010). In Forsyth, the court found that plaintiff had been frequently informed that the agreement to arbitrate, included in an employee handbook, was an express condition of her continued employment and she repeatedly assented to the arbitration agreement. Id. The court emphasized an email requiring employees to acknowledge review of new/updated policies that contained a direct link to an updated arbitration policy. Id. Further, while the court noted that it could not infer consent from plaintiff's position as former general counsel and later president and CEO, it recognized that plaintiff did not dispute that she knew and fully understood the arbitration policy. Id. Notably absent from the above cases is any provision in the handbooks or separate arbitration policies disclaiming their binding effect or enforceability.

The Court also finds the Arbitration Program unenforceable for lack of mutuality of obligation. The Third Circuit has found that an arbitration agreement is not illusory where the employer maintained the right to make material changes to the handbook only after putting the change in writing, providing a copy to the employees, and allowing the employees to accept the change by continuing employment. Blair v. Scott Specialty Gases, 283 F.3d 595, 604 (3d Cir. 2002). In Blair, the Third Circuit

23

distinguished cases in which other circuits found arbitration provisions illusory and unenforceable where the agreements "gave the provider of the arbitration services the unlimited right to modify the arbitration rules without giving notice to the employee or gaining the employee's consent." Id.

Here, Plaintiff has not identified any section of the Arbitration Program qualifying the general language on the first page of the Handbook which states that "Raymour & Flanigan reserves the right to change or modify Company rules, policies, practices and procedures, as well as the contents of this Handbook at any time with or without advance notice and at its sole discretion." (Am. Compl. Ex. 9 at 5.) Unlike Blair, the Handbook here does not require that the changes be put in writing and distributed to employees. Therefore, the language in the Handbook "makes performance entirely optional" for Plaintiff. Penn v. Ryan's Family Steak Houses, Inc., 269 F.3d 753, 760 (7th Cir. 2001). The Court will not compel arbitration based on a provision Plaintiff may invoke, modify, or ignore at its sole discretion without notice to and agreement by Defendant.[5]

---

[5] Having found the arbitration provision unenforceable due to the expansive Woolley disclaimer and lack of mutuality of obligation, the Court need not consider Defendant's additional arguments based on lack of consideration, effective vindication and unconscionability.

24

## IV. Conclusion

In light of the foregoing, the Court will deny Plaintiff's motion to compel arbitration and grant Defendant's motion to dismiss for failure to state a claim. The Court has subject matter jurisdiction because Defendant could potentially assert a claim under the ADA. However, there is no enforceable arbitration agreement between the parties. The unqualified disclaimer on the first page of Plaintiff's Handbook prevents the Court from concluding that Defendant clearly and unambiguously agreed to arbitrate. Moreover, Plaintiff's ability to change the contents of the Handbook at any time without notice renders any agreement to arbitrate therein illusory and unenforceable.


**January 2, 2014**                          **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             Chief U.S. District Judge